You can call the next case. Case number 10-1859, Vicky Koczor and Daniel Koczor v. Gregory Melnyk. Good morning. My name is Karen Beverly from the law firm of the Damski and Conte here today on behalf of the appellants Vicky and Daniel Koczor, who were the plaintiffs below. Obviously, we come here to ask the court to reverse the trial court's decision. We cite three sources of error, the first being the granting of the summary judgment in the first instance when equitable estoppel pulled the statute of repose. The second is when the trial court denied the Koczor's request to amend their complaint to further flush out the equitable estoppel allegations, which were contained in the first complaint, but just to address some of the trial court's concerns. Why don't we get to the equitable estoppel, because if there is a sufficient showing there, it sort of meets the requirement that there be material fact to preclude summary judgment. Why do you think that this case falls under the equitable estoppel doctrine? Well, I think when the court considers that question, the court necessarily must consider this case against the backdrop of what the purpose of equitable estoppel is. Well, there are certain elements, aren't there? There are elements. How do you meet those elements? We meet the elements in the following way, and I refer the court to the DeLuna case and cases along that vein, which kind of back off from some of the elements in cases of trust, in cases of fiduciary duty, which is absolutely present here. I think there's no doubt in the case law that an attorney-client relationship is a relationship of trust. In those cases, the DeLuna and the other cases, say there's no need for an affirmative misrepresentation. There's no need for an intent to mislead the other side. This isn't a case where Mr. Melnick had to pull up... implied representation that the attorney is capable of meeting the client's needs, that that automatically triggers equitable estoppel in the event things should go wrong. That's not what we're saying in this case at all. Then you're really saying that there's something more than just the attorney-client privilege that can trigger equitable estoppel. I need to know what really is present in this case that triggers equitable estoppel. And I'm not disagreeing with the court. The reason I raise that is because there's some argument in the response brief here that equitable estoppel is off the table right away because there was no affirmative misrepresentation. I just want to differentiate that and say that that's not necessarily a requirement. What we do have here that establishes equitable estoppel is the following. We have plaintiffs who reasonably relied to their detriment on the actions, or in this case the inactions, of the defendant in making the decision to not pursue a case against him in an earlier instance. The case law is clear that silence can constitute that misrepresentation, and that is what we have here. Once you have misrepresentation, you have reliance. They're opposite sides of the same coin. And where is the misrepresentation that occurred here other than silence, and what's your strongest case for silence being misrepresentation? I don't think there's that. Well, there's several affirmative misrepresentations. The first being that he knew how to handle this tax. Can you give me a case where the statute of repose would prevent following up on what is clearly negligent behavior and ordinarily action? I'm sure it would not. Give me a case where the statute of repose would be effective under your analysis. Here is how it would be effective. Applying it to the case here at hand. What we have in this case is we have two plaintiffs who did not hear from their attorney. They had no reason to hear from their attorney. I want to talk a little bit about the Hester case. In the Hester case, it was found that equitable estoppel did in fact toll the statute. The reason there is because the plaintiffs had no reason to be put on notice that something was wrong. It wasn't a case like the McIntosh case where they were calling their attorney saying, hey, what the heck is going on? Has my case been filed? What's the status? No. There was no reason for them to be put on notice. I submit to you that the case here is even stronger for that, and the reason is the purpose for which Mr. Melnick was hired. In a lot of the cases cited in the case. Aren't you really talking about the discovery statute or the discovery rule tolling a statute of limitations rather than a statute of repose? No. See, as I understand your particular argument with respect to this case, and I have a lot of respect for your argument because it doesn't, the statute of repose doesn't seem to take into consideration this kind of a case, and yet the statute of repose is designed to settle all matters as opposed to a statute of limitations, which can usually be trumped by the discovery rule, okay? It doesn't start to run until you knew or should have known that you'd been injured. Here, it would ordinarily apply except for the statute of repose, and what I'm trying to think of is a case where the statute of repose would preclude you from bringing your action. Under your analysis. Under your analysis. Because it seems to me what you've done is basically set aside the statute of repose in all cases where this sort of negligence occurs. Where neither the lawyer or the individuals were aware of any injury until after the statute of repose had run. You're basically saying, I think that the statute of repose should not apply in this kind of a case. No, I want to. And all such cases like it. I can think of thousands of cases like it, including every case where a deed is allegedly but not in fact filed. And nobody discovers that until many, many years later, which would be often the case. I want to. I take issue with a little bit of what Your Honor just said, and that is that neither party knew in this case. There is the letter, which I'm sure Your Honor is referring to, the February 2008 letter in which Mr. Melnick says, whoops, I forgot to file it. I blew it. He admitted his negligence. There is nothing. This came before the trial court on motion for summary judgment. It was up to Mr. Melnick's motion for summary judgment. He carried the burden to show that there was no question of fact. That is the only thing in the file which makes any reference whatsoever to him forgetting to file. There's no evidence as to when he first learned it. There's no evidence as to whether he knew it before February 2008 and just failed to mention it. You didn't take a step. His deposition was taken after these briefs were filed. And it's not part of the record. None of these briefs make any reference to the deposition. There was a deposition. There was a deposition. Under another pending case? No, it was while this, I believe, and again, it's not a record, but I believe it was while the motion to reconsider was pending. Okay. Was the deposition of records in this case? It's not been filed. The transcript, it's not been written. Well, then it's not a record. Correct. So we don't even consider the fact that there was ever a deposition taken. Correct. Correct. It's not a record. The only discovery that is part of the record in this case are the answers to interrogatories filed by. . . Presumably, if the deposition had supported your position that he knew somewhere earlier than when he admitted he knew, it would have come up in his deposition, and the deposition would have been part of the record, and that would have been a basis for avoiding summary judgment. Again, I. . . Presumably. I believe that the summary judgment. . . I don't mean to put you on the spot. No, I. . . I asked about the deposition because I just assumed that being no reference to a deposition in the record, that there, in fact, was no deposition. There was none at the time that the briefs were filed. But again, I want to make the point that there is nothing in the record focusing on what is before this Court. There's nothing in the record. . . Well, put yourself in the shoes of the trial judge who's got a motion for summary judgment in front of him. What disputed factual issue was he presented with that would have prevented summary judgment? Exactly the issue raised, for one, which is, was that letter the first instance that Mr. Melnick actually knew? I mean, we have to put this into context. The record as it stands, that is the only evidence that indicates when he knew, and it falls on the plaintiffs to demonstrate or at least suggest that there is a material question of fact that hasn't been answered. And as Justice Cahill said, put yourself in the position of the trial judge. What's the trial judge going to. . . He can only take the record as it exists before him. And if he says, this is all I have in front of me, you haven't demonstrated anything. To the contrary. I absolutely agree with that. And obviously, had we to do all over again, we would have asked that they. . . I know, but when you're asking the trial. . . The decision on the summary judgment. What you were presumably asking the trial judge to do was to say, well, the fact that he wrote a letter admitting his negligence in 2007 can at least lead you to the possible inference that he knew as early as 2000. It's a possible inference, but in this case, given the procedural posture. . . And you want that to be a basis for avoiding summary judgment. The letter? Yeah. The reason we raised the letter is to counter the argument that this was something that the Cozars could have just figured out on their own. It took three months from the initial contact after the Cozars realized that something was wrong until that letter. They contacted him in November. They received the letter in February. It took an attorney who specializes in this area of law three months. Yeah, I understand. So it's not something like the McIntosh case where they can call up the clerk and say, hey, what's going on with this? The entire purchase of the lots was a bit unusual. I don't know anyone who's purchased lots by a tax sale from the bidder. And it seemed to me that the plaintiffs would have said, what should I expect at the conclusion of this transaction? Do I get a deed? Do I get some sort of recording? And if they don't get something, that usually triggers a responsibility on the plaintiffs to take some initiative before that time period ends. I think that the unusual nature of this transaction is exactly what places this or one of the elements that places this within equitable estoppel. And the reason is this isn't a real estate purchase where they sit down at a table, there's clothing, some hands on the keys to a house. This is a real estate transaction where they bid at a tax sale. They get the certificates of the property. There's the redemption period. And then this isn't a case like the McIntosh case where it's, hey, it was a suit filed. Gosh, if a lawsuit's pending, I really would expect my attorney to call me and let me know if there's been any settlement negotiations or if there's discovery ongoing. There's nothing here in this case to put the COSARs on notice that anything went wrong. Some sort of evidence of ownership? They didn't expect anything? Well, and I think that that's something, too, that's not of record and that's one of the questions of fact that needs to be resolved. I don't know how these tax sales work. The COSARs certainly don't know how these tax sales work. Were they to expect some sort of deed? Was that represented to them by Mr. Melnick? That's not of record at all. And why should that absence in the record raise a material question of fact? We generally don't rely on the absence of evidence to raise a material question of fact. We rely on inferences from established facts that leave a material question of fact unanswered. We don't take absences because absences are never-ending. The inference here that the plaintiffs are urging that the insurance… The inference from established facts. The established facts is that there's one person in this entire transaction who knows whether or not Mr. Melnick recorded that deed. Right. Who knows what actions… My concern is that if we agree with your analysis of this case and take the facts as they are, forget about inferences, just the facts as they are, that letter that he wrote where he admitted that he did not file the deed, okay? We have basically said that the statute of repose will never apply in a legal malpractice case. And I don't think that's really what the law is or what the law can be, because the statute of repose is designed to put an end to things. And under your analysis, the statute of repose would never apply in a legal malpractice action where the lawyer simply blew it and forgot about it. Forgot about it. And maybe 30 years later, his negligence comes to light. And you're saying that there ought to be an equitable relief for somebody who's injured because of that. You may be right. But if that's the case, then we have to abolish the statute of repose. I don't think that's what we're urging at all. There are cases, both in the case law and cases that hypothetical cases… You've got some worst case scenarios, I know, that suggest that the equitable estoppel will apply to cure an injustice. For example, if Mr. Mellon… But it's always been with the condition, always been with the condition that somehow the attorney who committed the negligence led the client to believe that things had been taken care of, that there was some affirmative act that they could rely on. And the only reason that I raise those cases about the attorney-client relationship is because silence and the need to speak can stand as the affirmative act in this case. There is a presumption that Mr. Mellon knew if he filed it. He knew when he filed it at any period during the statute of repose. Someone could have walked up to him and said, hey, did you file that second deed in that COSAR case? And if he thought that, he would have said, you know what, I failed to do it. Did he make that realization during the six-year period at issue here? It's the plaintiff's position that if anyone did, it was him. He probably did. And that that letter was a self-serving response to being called out on that. None of that is a record, though. Those are the types of questions of fact that need to be resolved. And those are the types of questions of fact that make summary judgment on this issue improper. And that is why we're asking the court to reverse. All right, Ms. Beverly, we're going to give you a couple minutes to respond. We're going to hear from counsel. Thank you. May it please the Court, Stephen Cologe for the defense of Gregory Melnick. I would like to apologize again for the markings that I made in the record. I filed a motion on that, but I inadvertently marked some highlighter in the record. And I filed a motion to bring it to the Court of Appeals. That's a no-no, you know. It is. No markings on the record at all. It was a complete brain synapse, and it was an accident, and I do apologize. Justice Cahill just hit upon my first point, which was what the plaintiffs are asking the court to do is essentially erase the statute of repose in all attorney malpractice actions. They're asking this court to impose a presumption upon an attorney that the attorney automatically knows and realizes that the attorney committed malpractice if he did, and therefore is automatically charged with the duty to notify the client, and if he fails to do so, he's established. He's never off the hook. He's never off the hook. It's scary, isn't it? It is scary. It is very scary. And the thing is, that would apply in any situation where you have a fiduciary relationship. A physician-patient relationship would be analogous. Just simply by virtue of the fiduciary relationship, plaintiffs argue, the defendant must be charged with knowing and realizing that he erred, and the fact that he then didn't bring it to the client's attention stops him after the statute of repose is run. That cannot and is not the law. And the DeLuna case, the Jackson-Jordan case, those very cases. How about the Hester case? The Hester case involved actions by the attorney that occurred after the case was dismissed. This case involves no such evidence. The only communication is undisputed between my client and the plaintiff's occurred before the cause of action ever arose. It was the initial agreement to record the deeds. What if the plaintiffs had been able to develop information that the lawyer received only one deed, and that one deed, the recording of that, whatever document had to be recorded within that redemption period to prevent the revesting of the ownership to the previous owner, he had only received a document that listed only one of the two lots. He being the defendant or the? He being the attorney. And therefore, the law can presume that he was on notice that he failed to secure both lots for his clients. And therefore, he should be bound by that lack of duty. And he, in fact, at that point, once he is presumed to have notice or should have known that a duty arises, that he has to contact his client. And if he doesn't, estoppel is triggered. You said it yourself, Justice. If facts had been developed that showed that. This was a motion for summary judgment, and there was no factual evidence presented by the plaintiffs to even raise an inference that the defendant knew. In fact, as I pointed out in my brief, the plaintiff filed a response to the motion admitting to the trial court and citing that February of 08 letter, saying Mr. Melnick himself didn't realize his error until the plaintiffs brought it to his attention. If facts had been developed, as you suggest, we might have a whole different case here where there is a question of fact as to whether the attorney knew. And as DeLuna says, if he did know, then because of his fiduciary duty, he has to disclose those material facts to the client. But we don't have that situation here. We have no evidence in the record other than one telephone conversation before the cause of action arose where the attorney said, I'll record the deeds, undertook to do that, then nothing. The cause of action didn't even exist then for another couple of years until the redemption period expired. And then we have nothing after the cause of action arises until the statute of repose runs. We have no evidence of any knowledge, such as you suggest, that there was only nothing. So had the plaintiffs called their lawyer in 2000, 2001, whatever that time period is that would fall within the statute of repose, then we might have a different situation. Had he said not to worry, got it all done. We might. And I say we might because in McIntosh, after the attorney failed to file the lawsuit, the clients called twice to inquire about the status of the case, and the attorney didn't return the calls. And the court held that wasn't enough to create an equitable estoppel. Now, we're dealing with hypotheticals. Under the scenario you suggest, we might have a different situation. We might not. We might be under McIntosh still in the same situation. But either way, we don't have that here. And that's the problem with this case. As you suggested, Justice Cahill, that this would eliminate the statute of repose because there would automatically be a presumption of knowledge. And all the evidence in this case is that the attorney did not realize his error. The plaintiff submitted that much to the trial court. Given McIntosh, what you've just attributed to McIntosh, is there a case that actually says silence equals misrepresentation? I have not seen a case that has so held. DeLuna could be read, I suppose, to suggest that, but the facts in DeLuna do not involve silence. DeLuna says that an attorney is charged with disclosing material facts, and the failure to do so can support an estoppel. But I have not found a case. But it falls on, it depends on the information that the attorney had prior to. Correct. He had to have been unnoticed that he's fallen short. He had, exactly. And that's what, you know, DeLuna quotes from Hagney and says his silence when he ought to speak. When he ought to speak, right. His failure to disclose when he ought to disclose. He has to know. The second element of equitable estoppel is knowledge that you're saying something false or not. There is some sort of superficial appeal, though, that he had to know what he did. And we all know now that he didn't do everything he should have done. And to that extent, you can conclude that he knows that he didn't do everything he should have done. By virtue of his letter, confirmed by his letter, but we all know he didn't record what he had to record. As to both lots, he only recorded as to one lot. Well, respectfully, I disagree that there's a superficial appeal to that argument. And the reason being, it is equally as feasible that exactly what the plaintiffs said happened in their brief to the trial court happened. He forgot. He didn't realize. And the clear inference, the clear evidence before the court is the letter in February of 08 after the clients called and said, hey, the deed wasn't recorded. He said, I'll look into it and realized I didn't do that. The counsel for the plaintiffs did refer to that letter as self-serving. It doesn't strike me as self-serving as much as real candor. I suggest that's exactly what it is. Under DeLuna, he received an inquiry from the clients. He investigated. Maybe the response didn't come as quickly as they liked. But within a couple of months, he had sent them a letter acknowledging. And I think all of the elements here point to the conclusion that I think the court suggested, that if you don't affirm this ruling, we have erased the statute of repose. I'd just like to briefly touch on the motion for leave to file an amended complaint that came after the motion for summary judgment. The Hartzog decision that this court issued really, I think, is on point. And there are two problems here. One is that the motion was brought as a motion to reconsider, not as a motion for leave to amend. I suppose it was implied in there that they were seeking leave, but it wasn't expressly requested. The question is, under Hartzog, does that get judged by the standards for a motion to reconsider or the more liberal standards under Loyola Academy? Either way, the result should be the same. And the reason for that is, under the strict standard, of course, there is no change in the law or errors in the application of existing law and no new evidence presented. And under the more liberal standard, as Hartzog says, the prime element is prejudice. And there is substantial, overwhelming prejudice that would have happened had the trial court allowed this because what this complaint was an attempt to do is basically have a do-over. There was no explanation as to why they couldn't have amended before or simultaneously with their brief. There was no Rule 191B affidavit ever filed seeking an amendment. There was no affidavit, was there? No affidavit. And there was the admission that Mr. Melnick did not know until they brought it to his attention, and no explanation made to the trial court as to why now we can allege otherwise in a new complaint when there were no facts to show why. So I don't think the outcome would be any different here, even if a leave to amend had been allowed, because we'd still be faced with a complete absence of evidence that the defendant had any knowledge that he was under an obligation to disclose and fail to do so. So I'd ask that the Court affirm. All right. Well, thank you very much. Thank you. Ms. Beverly, a brief rebuttal? And why don't you go ahead and address the amended complaint, why you believe that that is reversible error? First, I want to point out counsel, I believe, stated that the motion to amend the complaint was brought as a motion to reconsider. In the response brief, it is acknowledged that an oral motion to amend was made immediately following the summary judgment. So the motion to reconsider was seeking to reconsider both the entry of the summary judgment as well as the denial. You're saying an oral motion to amend was made? Made immediately following the court's ruling. And that raises the question, if counsel was prepared to make that oral motion to amend, why didn't he do it before? Well, it's been plaintiff's position throughout this litigation that the allegations necessary to show equitable estoppel were adequately applied in the first instance. And that's how the trial judge ruled, and that's really what's before us? The trial court did not. The trial court took issue. And he ruled on the sufficiency of the pleadings? Correct. Which he found insufficient. And when the trial court then made the ruling showing that there was not sufficient allegation, obviously then in order to correct it, we can say, hey, listen, it's there. If you want us to flesh out these elements a little more, please give us the chance to do that. I want to really distinguish the Hartzog case, too. There is no contradiction in what was pled previously and why the plaintiff's here. Was there an additional allegation that wasn't present in the initial complaint? There's one. And if you actually, if you look at the response brief in this case at page 24, defendant himself makes the argument that the proposed amended complaint in this case is, I think they used the words, virtually identical to the first amended complaint, with the single exception that there is an additional element that was pled upon information of belief, again, because of the stage of discovery that we were at when the summary judgment was granted. But that contradicted your original decision? No, absolutely not. There's nothing in the second amended complaint which contradicted what was in the first amended complaint. What we did with the second amendment. You alleged on information of belief that he knew before he wrote the letter. Right. But you originally had alleged that the first time neither one of you knew about anything was when he sent the letter. So doesn't that contradict your position with respect to what he knew before he wrote the letter? If you're alleging that he knew sometime in that period where the statute of repose had not yet been triggered. Well, in the first, you know, the initial complaint, and I'd have to take another look at the allegation of the initial complaint regarding the letter. We didn't attach the letter to the initial complaint, and I don't know that we made a specific allegation with regard to that. That letter came up in substance in the motion for summary judgment. Well, your opponent suggests that you shifted your position. I'm sorry? You shifted your position post-summary judgment with respect to when Melnick was first aware of his negligence. It's not a case of shifting positions so much as listening to what the trial court verbalized as her concerns and saying, hey, judge, you know what, we can plead this to address your concerns and to show that we do have the elements of equitable estoppel here. Okay. Is it a female judge or a judge- It was Judge Barbara McDonald. Oh, Judge Barbara McDonald, okay. And the last thing I want to say about the amendment is, you know, I think we analyzed pretty sufficiently in our brief comparing to the Loyola Academy case in terms of all the elements being met to allow the amendment. I want to make one point that came up during counsel's argument, which I didn't have a chance to make when I was standing up here before, and that's in terms of the presumption that Mr. Melnick knew or should have known that something was wrong, that he did not file the deed. This isn't a case where there was one thing. He had two. There were two separate deeds here. He knew enough to file one. He did, in fact, file one. He took all the steps necessary to ensure that they had title to it. He knew at the time that he was retained that there were two. At the time that he was filing that, he must have realized, he had to have realized, that he was filing one, that he was filing one notice, not two for the second. So I think it's more than just absolute silence. It's more than just let's say they purchased one property here, and then he just failed to pick up their file again. He didn't do any work on their file, and oops, he forgot. It fell off of his radar. That's not the case here. He actually did take required steps with regard to the other lot at issue. In doing so, I think that we can absolutely, and this isn't a legal presumption that we're asking for. This is logic. We must presume that he knew what he was and was not doing. Why would he do that? That's one of the questions. In fact, I don't know why he did that. Did he have both certificates of tax? We don't know. It's not a record. But you're suggesting that there was some nefarious motive. Oh, no. Absolutely not. Absolutely not. As I see it, there's nothing in the record that tells why, what happened. So if you forget, you cannot really forget. You have to know that you forgot, and therefore, you really didn't forget. I'm just making the point that there's been arguments by counsel, and Your Honors have suggested that what plaintiffs are proposing here, in essence, does away with the statute. You're raising a scary burden on all attorneys, it seems to me. We're under an obligation never to forget. That would be a very difficult obligation for me to adhere to. I know that. And I'm a judge. That would be scary for me, too, Your Honor. But that's not what we're saying here. We're saying under the instance of this particular case, specific to the facts of this case, where he was hired for one thing, and that was to handle these tax sales. He did half of it. He didn't do half of it. There's a presumption that he knew he didn't do that other half of it. He stood silent and let the statute go. Thank you very much. The case will be taken under advisement. Court is in recess.